UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHUGUANG CHEN,<br><br>                Plaintiff,<br><br>    v.<br><br>PEOPLE'S REPUBLIC OF CHINA,<br><br>                Defendant. | Case No. 23-1833<br><br>Judge Dabney L. Friedrich |

**PLAINTIFF'S BRIEF REGARDING SUBJECT MATTER JURISDICTION**

The Court's April 30, 2025 minute order requests that the plaintiff, Shuguang Chen, demonstrate that one of the exceptions to the Foreign Sovereign Immunities Act applies. *See* 28 U.S.C. § 1605(a).[1] The non-commercial tort claims exception applies: this case is a personal injury action for damages in which Mr. Chen was assaulted, battered, and subjected to other non-commercial torts in the United States by employees, officers, and agents of the People's Republic of China ("PRC"). *See id.* § 1605(a)(5); Dkt. 1 ¶¶ 1–4. The Court thus has subject matter jurisdiction, and this case should not be dismissed.

## ARGUMENT

The Foreign Sovereign Immunities Act renders foreign states generally "immune from the jurisdiction of the courts of the United States and of the States[.]" 28 U.S.C. § 1604. But there are exceptions. *See* 28 U.S.C. § 1605 ("General exceptions to the jurisdictional immunity of a foreign state"); *id.* § 1605A ("Terrorism exception to the jurisdictional immunity of a foreign state"). One of those exceptions—the one that applies here—is for cases asserting non-commercial tort claims, *i.e.*, those cases where "money damages are sought against a foreign

---

[1] To the extent the order puts the burden of persuasion on Mr. Chen regarding this issue, Mr. Chen respectfully submits that that is improper. *See Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1131 (D.C. Cir. 2004) ("In accordance with the restrictive view of sovereign immunity reflected in the FSIA, the defendant bears the burden of proving that the plaintiff's allegations do not bring its case within a statutory exception to immunity.") (cleaned up); *see also, id.* (noting an open question as to whether, "in addition to the ultimate burden of persuasion, the defendant also bears the initial burden of production," and thus necessarily implying that there is no question that the defendant *does* bear the burden of persuasion).

To the extent the order merely puts the burden of production on Mr. Chen, and assuming that is appropriate, Mr. Chen submits that he can meet that burden via nonfrivolous allegations in the complaint. *E.g.*, *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 537 (1995) ("Normal practice permits a party to establish jurisdiction at the outset of a case by means of a nonfrivolous assertion of jurisdictional elements[.]"); *Kilburn*, 376 F.3d at 1132 & n. 5 ("Given that . . . that the plaintiff has not yet had an opportunity to conduct any [discovery], [allegations contained in a declaration were] more than sufficient to satisfy any possible burden of production at this stage of the litigation.").

state for personal injury . . . or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment." *Id.* § 1605(a)(5); *see also* Dkt. 1 ¶ 6 (alleging that the Court has subject matter jurisdiction because "money damages are sought from a foreign state for personal injury occurring in the United States and caused by the tortious act or omission of that foreign state and of officials, employees, or agents of that foreign state acting within the scope of their office, employment, or agency").

In a case that is on all fours with this one, the D.C. Circuit upheld the application of that exception in a case brought by protestor plaintiffs asserting tort claims against a foreign government's representatives for assaults committed outside of an embassy on U.S. soil. *Usoyan v. Republic of Turkey*, 6 F.4th 31, 37 (D.C. Cir. 2021). Just as the D.C. Circuit concluded that there was jurisdiction there, so too should the Court here.

### A. The Court has jurisdiction under the Foreign Sovereign Immunities Act because the non-commercial tort claims exception applies to this suit.

*Usoyan* involved claims for money damages against the Republic of Turkey for the tortious acts of the Turkish security forces charged with protecting Turkey's President Erdogan; while Erdogan was visiting, the security forces beat up a group of anti-Erdogan protestors who were on a street adjacent to the Turkish Ambassador's residence in D.C. and at another location near the Turkish Embassy. *See Usoyan*, 6 F.4th at 36–37. The plaintiffs' claims included claims for assault, battery, intentional infliction of emotional distress, and violation of D.C. Code § 22-3704, which creates a civil cause of action for injuries "demonstrat[ing] an accused's prejudice" against the victim's race, national origin, or political affiliation. *Id.* at 37. Under these circumstances, the D.C. Circuit rejected Turkey's claims for immunity under the Foreign

Sovereign Immunities Act and held that the non-commercial tort claims exception applied. *Id.* at 47.

This case is materially identical to *Usoyan*. In the context of Chinese politics, Mr. Chen is a "petitioner," meaning "someone who petitions the government, usually the central government, for redress of grievances, usually against local authorities." *See* Dkt. 1 ¶ 15. His grievance with the PRC government is that he lost approximately $812,000 USD to a corrupt judgment-enforcement proceeding. *Id.* ¶¶ 13-14.[2] He came to the United States, where he protested this corruption in areas where representatives of the PRC government would hear his message. *See* Dkt. 1 ¶¶ 41, 47, 53, 58, 64, 65. One of those locations was the public sidewalk in front of the PRC ambassador's residence at 2301 S Street, N.W., in the District of Columbia.

On June 22, 2022, while he was peacefully protesting at that location, a member of the PRC's diplomatic mission, Minister Xu Xueyuan, came out of the ambassador's residence and slapped Mr. Chen's cellphone out of his hand and into the middle of the road. *Id.* ¶ 22. Ms. Xu then spoke to a private security guard hired by the PRC government who was standing nearby, who then "violently arrested" Mr. Chen and called the U.S. Secret Service, who took Mr. Chen into custody. *Id.* ¶¶ 2, 24, 25. The charges against Mr. Chen were dropped. *Id.* ¶ 27.

On another occasion on August 11, 2022, Mr. Chen again returned to peacefully protest at the same location and a group of men, including individuals identified in the complaint as Does 1

---

[2] Corruption in Chinese judgment enforcement proceedings is a well-known topic. *See* Ling Li, "Corruption in China's Courts," JUDICIAL INDEPENDENCE IN CHINA: LESSONS FOR GLOBAL RULE OF LAW PROMOTION (Cambridge Univ. Press June 2012), at 209–10 ("In practice, both plaintiffs and defendants can bribe the enforcement personnel to either expedite or delay the procedure, depending on which party is making the request. . . . Other than accelerating the procedure, plaintiffs also bribe enforcement judges to prioritize their court award in litigation involving multiple creditors. . . . In some cases judges also accede to requests from losing defendants to stall the enforcement, temporarily or indefinitely.").

and 2, came out of the ambassador's residence with bullhorns, confronted him, put the bullhorns in his face, and repeatedly blasted the extremely loud siren function. *Id.* ¶ 29.

Mr. Chen injuries (unwanted physical contact, ear pain, tinnitus, increased sensitivity to sound, headaches, and hearing loss) were caused by the tortious acts of these officials or employees of the PRC. *Id.* ¶ 33; *see also, e.g.*, *Ray v. United States*, 575 A.2d 1196, 1198 (D.C. 1990) ("It is firmly established in our case law that the injury resulting from or threatened by an assault may be extremely slight. There need be no physical pain, no bruises, no breaking of the skin, no loss of blood, no medical treatment."); *Eichenwald v. Rivello*, 318 F. Supp. 3d 766, 775 (D. Md. 2018) ("If a person used . . . a sonic weapon to intentionally cause permanent hearing loss, that would constitute a battery, even though the contact at issue was 'only' a . . . sound wave.") (cleaned up).

Those officials or employees were acting within the scope of their employment. They work for the PRC government, including at the ambassador's residence. Dkt. 1 ¶¶ 2, 29. They emerged from that residence when the tortious conduct took place. *Id.* ¶¶ 21, 29. They did so because they were unhappy with the fact that Mr. Chen was protesting the government they worked for. *Id.* ¶¶ 5, 39, 45, 50. In the case of Does 1 and 2, they were carrying items housed inside the ambassador's residence for the express purpose of using them as weapons against protestors. *Id.* ¶ 32. Ms. Xu, and Does 1 and 2, were therefore acting within the scope of their employment. *See, e.g.*, *Hechinger Co. v. Johnson*, 761 A.2d 15, 24 (D.C. 2000) ("[A]n employer is subjected to liability for acts of his employee because of his employment and in furtherance of the employer's interests. . . . [I]f the employee acts in part to serve his employer's interest, the employer will be held liable for the intentional torts of his employee even if prompted partially by personal motives, such as revenge."); *Johnson v. Weinberg*, 434 A.2d 404 (D.C. 1981)

4

(finding that a jury could find a laundromat employee's shooting of a customer within the scope of employment because "the assault arose out of the transaction which initially brought [the customer] to the premises . . . and was triggered by a dispute over the conduct of the employer's business."); *Lyon v. Carey*, 533 F.2d 649, 651 (D.C. Cir. 1976) (finding a deliveryman's rape and assault of a woman accepting a delivery to be within the scope of employment because "[t]he dispute arose out of the very transaction which had brought [the deliveryman] to the premises"). As such, Mr. Chen is suing their employer, the PRC government, for assault, battery, intentional infliction of emotional distress, and the violation of D.C. Code § 22-3704 based on his political affiliation. *Id.* ¶¶ 34–64.

These facts more than meet the requirements of the non-commercial tort exception set forth in 28 U.S.C. § 1605(a)(5). *See, e.g.*, *Usoyan*, 6 F.4th at 38 (D.C. Cir. 2021) (affirming the district court's conclusion that it had jurisdiction under 28 U.S.C. § 1605(a)(5)). Indeed, a substantial body of case law confirms that foreign sovereigns do not enjoy immunity under the FSIA when they commit non-commercial torts in the United States. *See USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103, 114 (2d Cir. 2012) (FSIA's non-commercial tort exception applied when Namibia negligently damaged a neighbor's wall while constructing its mission in Manhattan); *Olsen by Sheldon v. Gov't of Mexico*, 729 F.2d 641, 645 (9th Cir. 1984), *abrogated on other grounds*, *Joseph v. Off. of Consulate Gen. of Nigeria*, 830 F.2d 1018, 1026 (9th Cir. 1987) (FSIA's non-commercial tort exception applied when Mexico negligently caused an airplane crash that resulted in the death of the plaintiffs' family members while they were being transported from Mexico to the United States in a prisoner exchange); *Liu v. Republic of China*, 892 F.2d 1419, 1425 (9th Cir. 1989) (FSIA's non-commercial tort exception applied when the Republic of China directed the murder of the plaintiff's husband in California);

5

*O'Bryan v. Holy See*, 556 F.3d 361, 386 (6th Cir. 2009) (FSIA's non-commercial tort exception applied to child sex abuse claims when Holy See employees "had knowledge of the alleged sexual abuse of priests" but "failed to act on that knowledge"). The Court accordingly has subject matter jurisdiction.

    **B.**  **Neither of the provisions that preclude application of the non-commercial tort claims exception apply to the facts here.**

Nor do the provisions[3] that would prevent the application of 28 U.S.C. § 1605(a)(5) apply. The first provision says that there is still immunity for claims "arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]" 28 U.S.C. § 1605(a)(5)(B). The second says that there is immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function." *Id.* § 1605(a)(5)(A). Neither provision has any effect here.

    1.  With respect to the first provision, Mr. Chen does not assert claims arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights, and so that exception does not apply. *See* 28 U.S.C. § 1605(a)(5)(B). The complaint's allegations do discuss how one of the PRC's employees (Ms. Xu) caused Mr. Chen to be falsely arrested, but there is no malicious prosecution or abuse of process claim related to those allegations, and the tort claims asserted do not arise out of the false arrest—which occurred *after* the tortious conduct that gives rise to the claims here. *See* Dkt. 1 ¶¶ 24–26. *Cf. Khochinsky v. Republic of Poland*, 1 F.4th 1, 11 (D.C. Cir. 2021) (FSIA's non-commercial tort claims exception did not apply when the plaintiff's First Amendment retaliation and tortious

---

[3] Mr. Chen submits that the PRC bears the burden of both production and persuasion with respect to these provisions. Nevertheless, Mr. Chen briefs them to give the Court additional confidence that it has subject matter jurisdiction here.

6

interference claim both closely arose out of Poland's failed attempt to extradite the plaintiff—an abuse of process).

2. With respect to the discretionary function provision, the relevant case law, which comes mostly from Federal Torts Claims Act cases, sets forth two conditions. First, "there must be no federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow." *Usoyan*, 6 F.4th at 38. Second, "the employee's exercise of discretion must be the kind that the discretionary function exception was designed to shield—that is, "based on considerations of public policy." *Id.*

Here, as set forth in *Usoyan*, when it comes to FSIA cases, the first condition will often require an antecedent inquiry, namely whether the foreign government had *any* authority to take the type of action challenged in the first place. That is because, "[i]f a foreign government has no authority to take a certain type of action in the United States, its employee's action in that sphere cannot constitute an exercise of discretion." *Id.* at 40. And courts "need not ponder whether [a sovereign's] discretion was taken away if it never existed in the first place." *Id.*

Here, Mr. Chen submits that the PRC had no such authority in the first place. For one, the PRC has no authority to regulate the way people protest on soil not its own. Nor, given the lack of any threat to the safety of its diplomats, was its arguable right to protect its diplomats implicated. *Cf. Usoyan*, 6 F.4th at 43 ("[A] sending state has a right in customary international law to protect diplomats and other high officials representing the sending state abroad."). Because the PRC had no authority to take the type of action challenged by Mr. Chen in the first place, there is no discretion for this Court's exercise of jurisdiction to take away, and the first condition is not met.

Neither is the second, which requires that the challenged conduct must be grounded in "considerations of public policy," like "social, economic, and political policy" considerations. *Usoyan*, 6 F.4th at 45. This means deliberate cost-benefit analysis with consideration for policy concerns like "social wisdom," "political practicability," or "economic expediency." *Id.* But carelessness, negligence, or malicious conduct are not discretionary functions. *Id.* Indeed, even a government official's "garden-variety discretion receives no protection," and courts are discouraged from recasting actions that have "only the faintest hint of policy concern" into a discretionary action requiring policy analysis. *Id.*

Here, as in *Usoyan*, the second condition is not met. That is because the actions and decisions taken by Ms. Xu and Does 1 and 2 cannot possibly be said to have been based on public policy considerations. Even in *Usoyan*, where there was at least an argument that the Turkish security forces needed to make security-related decisions about the safety of the Turkish president, the D.C. Circuit concluded that the discretionary function rule did not apply, because they were not "the kind of security-related decisions that are fraught with economic, political, or social judgments." *Usoyan*, 6 F.4th at 47. Instead, in *Usoyan*, as here, the challenged conduct was simply a lawless attack to silence protestors with legitimate grievances and who wanted the relevant foreign government to hear it. The discretionary function exception does not therefore apply. *See also, e.g.*, *Yang v. ICS Protective Servs.*, No. 1:22-CV-03836 (TNM), 2023 WL 5528386, at *5 (D.D.C. Aug. 28, 2023) (holding that there was no immunity for a claim arising from "a mere scuffle with guards" because the guards were performing "a basic task, not an immunized policy choice").

## CONCLUSION

Mr. Chen respectfully submits that this Court has jurisdiction under the Foreign Sovereign Immunities Act.

Date:   May 14, 2025

Respectfully submitted,

/ s / Times Wang
Times Wang (D.C. Bar 1025389)
FARRA & WANG PLLC
1543 Champa St., Ste. 400
Denver, CO 80202
Telephone: (202) 505-6227
twang@farrawang.com

Adam H. Farra (D.C. Bar 1028649)
FARRA & WANG PLLC
1300 I Street, N.W., Ste. 400E
Washington, D.C. 20005
Telephone: (202) 505-5990
afarra@farrawang.com

*Attorneys for Plaintiff*